FILED

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF VIRGINIA

2010 APR 30 P 4: 38

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| KEVIN V. MEEHAN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| ROBERT MCKEON, WILLIAM BALLHAUS, BARRY MCCAFFREY, RAMZI MUSALLAM, JOSEPH PRUEHER, LEIGHTON SMITH, HERBERT LANESE, CHARLES REAM, MICHAEL BAYER, MARK RONALD, PETER SCHOOMAKER, DYNCORP INTERNATIONAL INC., DELTA TUCKER HOLDINGS, INC., and DELTA TUCKER SUB, INC., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No.  1:10CV446
(JCC(IDD))

**JURY TRIAL DEMANDED**

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

1.     Plaintiff brings this action on behalf of the public stockholders of DynCorp International Inc. ("DynCorp" or the "Company") against defendants, DynCorp and its Board of Directors seeking equitable relief for their breaches of fiduciary duty and other violations of state law arising out of their attempt to sell the Company to Delta Tucker Holdings, Inc. and Delta Tucker Sub, Inc., affiliated funds and/or managed accounts of private investment firm Cerberus Capital Management, L.P. (collectively "Cerberus") by means of an unfair process and for an unfair price of $17.55 per share in cash for each share of DynCorp common stock (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $1.5 billion, including the assumption of debt.

## JURISDICTION AND VENUE

2.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the plaintiff and the defendants. *See* 28 U.S.C. § 1332. In this action, Plaintiffs seek to enjoin a transaction valued at approximately $1.5 billion and accordingly the amount in controversy requirement is met.

3.      Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District.   In addition, DynCorp maintains its principal executive offices in Falls Church, Virginia.

## PARTIES

4.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of DynCorp. Plaintiff is a citizen of the state of New York.

5.      DynCorp is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal corporate offices at 3190 Fairview Park Drive, Suite 700, Falls Church, Virginia 22042, and provides specialized critical services to civilian and military government agencies worldwide, and operates programs in law enforcement training and support, security services, base operations, aviation services, contingency operations, and logistics support.

6.      Defendant Robert McKeon ("Mckeon") has been the Chairman of the Board of the Company since 2005. He is a citizen of the State of Connecticut.

7.      Defendant William Ballhaus ("Ballhaus") has been President, Chief Executive Officer and a director of the Company since May 2008. He is a citizen of the State of Virginia.

8.      Defendant Barry McCaffrey ("McCaffrey") has been a director of the Company since 2006. He is a citizen of the State of Virginia.

2

9.      Defendant Ramzi Musallam ("Musallam") has been a director of the Company since 2007. He is a citizen of the State of New Jersey.

10.     Defendant Joseph Prueher ("Prueher") has been a director of the Company since 2005. He is a citizen of the State of Virginia.

11.     Defendant Leighton Smith ("Smith") has been a director of the Company since 2005. He is a citizen of the State of Iowa.

12.     Defendant Herbert Lanese ("Lanese") has been a director of the Company since 2008. He is a citizen of the State of Virgnia.

13.     Defendant Charles Ream ("Ream") has been a director of the Company since 2006. He is a citizen of the State of Virginia.

14.     Defendant Michael Bayer ("Bayer") has been a director of the Company since 2006. He is a citizen of the State of Maryland.

15.     Defendant Mark Ronald ("Ronald") has been a director of the Company since 2006. He is a citizen of the State of Virgnia.

16.     Defendant Peter Schoomaker ("Schoomaker") has been a director of the Company since 2007. He is a citizen of the State of Virgnia.

17.     Defendants referenced in ¶¶ 4 through 16 are collectively referred to as Individual Defendants and/or the DynCorp Board. The Individual Defendants as officers and/or directors of DynCorp, have a fiduciary relationship with Plaintiff and other public shareholders of DynCorp and owe them the highest obligations of good faith, fair dealing, loyalty and due care.

18.     Defendant Delta Tucker Holdings, Inc. is a Delaware corporation with its headquarters located in Delaware and is an affiliate of Cerberus Capital Management, L.P., one

3

of the world's leading private investment firms with approximately $23 billion under management in funds and accounts.

19.     Defendant Delta Tucker Sub, Inc. is a Delaware corporation with its headquarters located in Delaware and is wholly owned by Delta Tucker Holdings, Inc. and was created for the purposes of effectuating the Proposed Transaction.

### INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

20.     By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of DynCorp and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty and full, candid and adequate disclosure, as well as a duty to maximize shareholder value.

21.     Where the officers and/or Directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; (ii) a break up of the corporation's assets; or (iii) sale of the corporation, the Directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with their fiduciary duties, the Directors and/or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits them from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the Directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

22.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as Directors and/or officers of DynCorp, are obligated to refrain from:

(a)     participating in any transaction where the directors or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

23.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to Plaintiff and other public shareholders of DynCorp, or are aiding and abetting others in violating those duties.

**CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION**

24.    In committing the wrongful acts alleged herein, each of the defendants has pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

25.     During all relevant times hereto, the defendants, and each of them, initiated a course of conduct which was designed to and did: (i) permit Cerberus to attempt to eliminate the public shareholders' equity interest in DynCorp pursuant to a defective sales process, and (ii) permit Cerberus to buy the Company for an unfair price. In furtherance of this plan, conspiracy and course of conduct, defendants, and each of them, took the actions as set forth herein.

26.     Each of the defendants herein aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions, as particularized herein, to substantially assist the commission of the wrongdoing complained of, each defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing.  The defendants' acts of aiding and abetting included, *inter alia*, the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise and common course of conduct complained of herein.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of DynCorp common stock and their successors in interest, except defendants and their affiliates (the "Class").

28.     This action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable.  As of April 23, 2010, DynCorp has approximately 56.29 million shares outstanding.

(b)     questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Have the Individual Defendants breached their fiduciary duties owed by them to Plaintiff and the others members of the Class;

(ii)     Are the Individual Defendants, in connection with the Proposed Transaction of DynCorp by Cerberus, pursuing a course of conduct that does not maximize DynCorp's value in violation of their fiduciary duties;

(iii)     Have DynCorp and Cerberus aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(iv)     Is the Class entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for defendants.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

29.     DynCorp is a leading provider of specialized, mission-critical professional and support services outsourced by the U.S. military, non-military U.S. governmental agencies and

foreign governments. The Company's specific global expertise is in law enforcement training and support, security services, base and logistics operations, construction management, aviation services and operations, and linguist services. The Company has provided essential services to numerous U.S. government departments and agencies since 1951.

30.     The Company has recently acquired two companies to expand its services and fuel growth. On September 28, 2009, the Company announced that it entered into a definitive agreement to acquire 100% of the stock of Phoenix Consulting Group, Inc. ("Phoenix"). Phoenix provides its proprietary training courses and materials and management consulting and augmentation services to the intelligence community. As stated in the press release announcing the transaction, "the acquisition is expected to expand DynCorp International's services to the intelligence community and national security clients."  As stated by Defendant Ballhaus, the Company's CEO, the acquisition is "consistent with our goal of accelerating growth, expanding service offerings and penetrating new segments...Phoenix's talent complements DynCorp International's business and extends our ability to deliver compelling services to the intelligence community and national security clients. This acquisition will continue to strengthen DynCorp International as a leading provider of specialized mission-critical services to civilian and military government agencies worldwide."

31.     On January 25, 2010, the Company announced that it acquired 100% of the stock of Casals & Associates, Inc. ("Casals"). Casals, a private company headquartered in Alexandria, Va., helps to achieve U.S. foreign policy and international development priorities by assisting in the development of stable and democratic governments, implementing anti-corruption initiatives, and aiding the growth of democratic public and civil institutions.  As stated in the press release announcing the deal, Casals will be integrated within DynCorp International's Global

Stabilization and Development Solutions division. As stated by Defendant Ballhaus, the Company's CEO, the acquisition of Casals expands the breadth of the Company's service offerings:

> This acquisition addresses our goal of creating value through continued growth and business diversification, and furthers our alignment with the Obama Administration's emphasis on the application of 'smart power' to global challenges. We support defense, diplomacy, and development initiatives around the globe." said DynCorp International President and CEO William L. Ballhaus. "Adding Casals' talent and well-deserved reputation for excellence in building the rule of law, supporting democratic governance and fighting corruption will expand the breadth of our services offerings in international development.

32.     Moreover, in an article on seekingalpha.com dated December 8, 2009, the author described how DynCorp was set to significantly benefit from President Obama's recent plans to escalate the war in Afghanistan by as much as $7.5 billion. As stated in the article, in part:

> In front of a crowd of cadets at West Point Military Academy last Tuesday, President Obama signaled for the escalation of the war in Afghanistan that most of us saw coming many miles away. This escalation, dubbed Obama's "surge" by some (including myself, apparently) is set to consist of 30,000 additional troops on the ground, all of whom are scheduled to arrive by next summer.
>
> Not one to sell himself short, Pres. Obama has outlined an equally ambitious plan to begin drawing troops out of the Afghan countryside within 18 months. So the big question remains, which companies are best positioned to profit off of this approx. 2-year military frenzy?
>
> Because the President decided to go down the mega-troop-influx route rather than the special forces-based route that was supported by Vice President Joe Biden, the beneficiaries should be the suppliers of conventional warfare.
>
> ***
>
> In addition to suppliers of warfare, battlefield contractors are poised to profit from Obama's surge as well. These contractors aren't the paramilitary contractors that have made headlines in past, but rather the contractors that "will continue to provide a wide range of tasks essential for operations including maintenance, construction, transportation, security and base support." And considering the lack of viable infrastructure in Afghanistan, there should be a fair amount of money ready to go around.

*Two companies perhaps best positioned to profit in this respect are Fluor Corp. (FLR) and DynCorp International Inc. (DCP). The two hold "what is effectively the biggest Defense Department contract supporting U.S. forces in Afghanistan which could be worth as much as $7.5 billion to each company in the coming years."*

33.     On January 28, 2010, the Company won a task order for operations and maintenance support in Liberia. Under the task order, DynCorp will provide operations and maintenance support for facilities of the Armed Forces of Liberia at Edward B. Kesselly Barracks and Camp Ware in Liberia. Services provided will include electrical power generation, water supply, waste disposal, and vehicle maintenance.  The task order, with a value of $5.2 million for the initial 6 month base period, has a potential total value of $20 million over two years if all options are exercised.

34.     On February 3, 2010, the Company announced its financial results for the third quarter of fiscal year 2010 ended January 1, 2010. DynCorp had an outstanding quarter reporting total revenue of $914.97 million and net income of $20.428 million as compared to total revenue and net income of $821.372 million and $14.756 million, respectively, for the prior quarter. The Company also announced certain operational highlights for the quarter, including:

- Closed the acquisition of Phoenix Consulting Group Inc.

- Continued ramp-up of the Afghanistan task order under the LOGCAP IV contract

- Earned second consecutive 100% award fee score on the INSCOM program by our Global Linguist Solutions (GLS) joint venture

- Achieved full operational capability on the Department of State aviation operations program in Iraq

35.     In the press release announcing the results, Defendant Ballhaus commented on the Company's bright outlook for the future: "With a healthy backlog and pipeline, and two recent acquisitions opening up new channels to market, *we are well positioned for continued growth*

*and value creation supporting defense, diplomacy, and development initiatives around the globe.*"

36.     Moreover, the Company has recently entered into a series of significant new contracts.   On March 17, 2010, the U.S. Air Force has awarded DynCorp a task order under the Contract Field Teams contract to maintain C-130 and P-3 aircraft. The task order has a potential revenue value of $6.2 million over 14 months.   On March 25, 2010, the U.S. Army Aviation and Missile Command awarded a contract to DynCorp to provide helicopter maintenance support services for the Royal Saudi helicopter fleet. The contract, which was awarded under the Foreign Military Sales program, has a two year base period with a contract value of $17.2 million, and three one-year option periods. The total potential value if all options are exercised is up to $43.1 million.

37.     On April 8, 2010, the U.S. Army awarded DynCorp a new task order under the Field and Installation Readiness Support contract to manage the Field Logistics Readiness Center ("FLRC") at Fort Bliss, Texas. The task order has a potential value of $93 million over 3 years if all options are exercised. At the Fort Bliss FLRC and the surrounding area, DynCorp will provide augmentation support to the Army for equipment maintenance, depot repair, and installation of Modification Work Orders for Automotive Systems, Power Generation Systems, Weapons, Communications Systems, and receipt, storage, and issue of parts, packing and shipping.

38.     Despite their recent performance, acquisitions, President Obama's Afghanistan plans, significant new contracts, and poise for growth, the Company agreed to enter into the Proposed Transaction. In a press release dated April 12, 2010, the Company announced that it had entered into a merger agreement with Cerberus, stating, in part:

Falls Church, VA, April 12, 2010 – DynCorp International, Inc. (NYSE: DCP), a leading global government services provider in support of U.S. national security and foreign policy objectives, today announced it has entered into a definitive agreement to be acquired by affiliated funds and/or managed accounts of private investment firm Cerberus Capital Management, L.P. ("Cerberus") in a transaction with a total value of approximately $1.5 billion, including the assumption of debt.

The agreement was approved by DynCorp International's Board of Directors and the Board will recommend that DynCorp International's stockholders approve the transaction. Under the agreement, DynCorp International's stockholders will receive $17.55 in cash for each share of DynCorp International common stock they own...

39.     The Proposed Transaction price is inadequate. In the months prior to the Proposed Transaction, DynCorp stock had been trading well in excess of the Proposed Transaction offer price of $17.55. In fact, as recently as October 20, 2009, DynCorp's stock traded at $18.38, and in August 2009 it traded at over $22 per share. Moreover, at least one Wall Street analyst set a price target of $20.00 per share before the Proposed Transaction was announced.

40.     In an article titled "DynCorp: Undervalued Defense Stock with Substantial Upside" on seekingalpha.com dated January 28, 2010, the author estimated the fair value of DynCorp stock at $20 per share. As stated in the article, in part:

The company is estimated to earn $1.56 per share this year (FY ending March 2010) and $1.75 next year. At around $11, the stock is trading at just 7x trailing and forward EPS. The company's free cash flow has been in line with net income. The company is using its free cash flow to repay debt, make small acquisitions and buy back stock. Revenue has been growing at a steady 10% clip, which is expected to continue with $3.45Bn this year and $3.78Bn next year.
***
I estimate the fair value for DCP stock at $20, using a conservative 12x multiple on calendar year 2010 EPS of $1.70. That's more than 75% upside – hard to find in many other stocks in a market that is up a lot in the last year.

41.     Given the Company's recent performance and its poise for growth through its recent acquisitions, the consideration shareholders are to receive in the Proposed Transaction is

inadequate. Cerebrus is picking up the Company at the most opportune time, at a time when the Company is poised for growth and its stock is trading at a huge discount to its intrinsic value.

42.     In addition, on April 12, 2010, the Company filed a Form 8-K with the United States Securities and Exchange Commission ("SEC") wherein it disclosed the operating Agreement and Plan of Merger for the Proposed Transaction (the "Merger Agreement"). As part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

43.     By way of example, although the Company has 28 days following the signing of the Merger Agreement to solicit competing proposals, on May 9, 2010, the go-shop period ends and the Company, pursuant to §6.2(b) of the Merger Agreement "immediately cease and cause to be terminated any discussions or negotiations with any [parties] that may be ongoing with respect to" any competing bids, "and request any such [parties] to promptly return or destroy all confidential information concerning the Company."

44.     In addition, Pursuant to §6.2(e) of the Merger Agreement, should the Company receive a competing bid, the Company must notify Cerberus of the bidder's offer.  Thereafter, should the Board determine that the competing offer is superior, Cerberus is granted four business days to amend the terms of the Merger Agreement to make a counter-offer so that the Company no longer needs to accept the competing proposal.  Cerberus is able to match the unsolicited offer because it is granted unfettered access to the unsolicited offer, in its entirety, eliminating any leverage that the Company has in receiving the unsolicited offer.

45.     In other words, the Merger Agreement gives Cerberus access to any rival bidder's information and allows Cerberus a free right to top any superior offer.  Accordingly, no rival

bidder is likely to emerge and act as a stalking horse for Cerberus, because the Merger Agreement unfairly assures that any "auction" will favor Cerberus and piggy-back upon the due diligence of the foreclosed second bidder.

46.     In addition, the Merger Agreement provides that a termination fee of $30 million must be paid to Cerberus by DynCorp if the Company decides to pursue said other offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

47.     In addition, affiliates of Veritas Capital Fund Management, L.L.C. have executed a voting agreement pursuant to which they have agreed to vote shares owned by them representing, in the aggregate, 34.9% of the outstanding shares of DynCorp in favor of the Proposed Transaction.

48.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIM FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty – Failure to Maximize Shareholder Value
### (Against All Individual Defendants)

49.     Plaintiff repeats all previous allegations as if set forth in full herein.

50.     As Directors of DynCorp, the Individual Defendants stand in a fiduciary relationship to Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care. The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize DynCorp's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

14

51.     As discussed herein, the Individual Defendants have breached their fiduciary duties to DynCorp shareholders by failing to engage in an honest and fair sale process.

52.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of DynCorp's assets and will be prevented from benefiting from a value-maximizing transaction.

53.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

54.     Plaintiff and the Class have no adequate remedy at law.

### COUNT II
### Aiding and Abetting
### (Against DynCorp and Cerberus)

55.     Plaintiff repeats all previous allegations as if set forth in full herein.

56.     As alleged in more detail above, DynCorp and Cerberus are well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders.   Defendants DynCorp and Cerberus aided and abetted the Individual Defendants' breaches of fiduciary duties.

57.     As a result, Plaintiff and the Class members are being harmed.

58.     Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction;

(C)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D)     directing that defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Dated: April 30, 2010                    Respectfully submitted,

By: _Elizabeth K. Tripodi_

Elizabeth K. Tripodi (VSB # 78483)
Donald Enright
FINKELSTEIN THOMPSON, LLP
1050 30th Street NW
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
E-mail: etripodi@finkelsteinthompson.com

*Counsel for Plaintiff*

**OF COUNSEL**
LEVI & KORSINSKY, LLP
Eduard Korsinsky, Esq.
Juan E. Monteverde, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171